## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

CARROLINE WEBB,                        )
                                       )
               Plaintiff,        )
                                       )
v.                                     )        Case No. CIV-24-00806-JD
                                       )
MDOW INSURANCE COMPANY and )
CROFT CLAIMWORKS, LC,                  )
                                       )
               Defendants.       )

## ORDER

Before the Court is Plaintiff Carroline Webb's ("Plaintiff") Partial Motion for

Summary Judgment ("the Motion"). [Doc. No. 30]. Defendants MDOW Insurance

Company ("MDOW") and Croft Claimworks, LC ("Croft") (collectively "Defendants")

filed a Response. [Doc. No. 41]. Plaintiff filed a Reply. [Doc. No. 42]. For the reasons

outlined below, the Court denies the Motion.

## I.    MATERIAL UNDISPUTED FACTS

Plaintiff had an MDOW motor vehicle insurance policy ("the Policy"). [Doc. No.

30 ¶ 1; Doc. No. 41 ¶ 1]. Plaintiff's daughter was involved in a car accident in the insured

vehicle. [*Id.*]. Plaintiff submitted a claim to MDOW, who engaged Croft to administer the

claim. [Doc. No. 30 ¶ 2; Doc. No. 41 ¶ 2]. Neither MDOW nor Croft disputed coverage.

[*Id.*].

Plaintiff took the insured vehicle to Bob Howard Auto Repair, which provided

Plaintiff with an estimate of $4,982.25 for repairs, not factoring in Plaintiff's deductible.

[Doc. No. 30 ¶ 3; Doc. No. 41 ¶ 3].

MDOW provided Plaintiff with a document entitled "Sworn Statement in Proof of Loss (Automobile)" ("the Proof of Loss"). [Doc. No. 30 ¶ 4; Doc. No. 41 ¶ 4]. The Proof of Loss contained the following language:

> The loss or damage for which this claim is made has been made good to my entire satisfaction and I hereby release and discharge the Company from all claims for loss or damage resulting from the above described accident and authorize payment of the above described amount to _____ whose receipt for same shall be a complete acquinttance [sic].

[Doc. No. 30 ¶ 5; Doc. No. 41 ¶ 5]. The Proof of Loss listed $1,798.01 (after application of the deductible) as the "actual loss and damage" amount for the Insured Vehicle. [Doc. No. 30 ¶ 6; Doc. No. 41 ¶ 6]. Plaintiff declined to sign the Proof of Loss. [Doc. No. 30 ¶ 8; Doc. No. 41 ¶ 8]. Plaintiff ultimately signed a version of the Proof of Loss with parts redacted. [Doc. No. 30 ¶ 9; Doc. No. 41 ¶ 9]. Croft responded that it would not accept the Proof of Loss as altered by Plaintiff. [Doc. No. 30 ¶ 10; Doc. No. 41 ¶ 10].

## II.    **BACKGROUND**

Plaintiff initiated this lawsuit in the District Court for Oklahoma County. [Doc. No. 1-1]. Defendants removed the case to this Court based upon diversity jurisdiction. [Doc. No. 1]. Plaintiff asserts causes of action of breach of contract and breach of the duty of good faith and fair dealing against Defendants and seeks punitive damages. [Doc. No. 1-1 ¶¶ 15–18].

Plaintiff filed the Motion, requesting summary judgment upon her claims of breach of contract and breach of the duty of good faith and fair dealing. [Doc. No. 30].[1]

---

[1] Plaintiff titles her Motion as a partial summary judgment motion, as she argues the scope of damages remains an issue for the jury. [*Id.* at 1].

III.    **STANDARD OF REVIEW**

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is material if under the substantive law it is essential to the proper disposition of the claim." *Savant Homes, Inc. v. Collins*, 809 F.3d 1133, 1137 (10th Cir. 2016) (internal quotation marks and citation omitted); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). A dispute about a material fact is genuine if a rational trier of fact could find in favor of the nonmovant on the evidence presented. *Fassbender v. Correct Care Sols., LLC*, 890 F.3d 875, 882 (10th Cir. 2018); *see also Anderson*, 477 U.S. at 248 (explaining a dispute about a material fact is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

In applying this standard, the Court "review[s] the facts and all reasonable inferences those facts support[ ] in the light most favorable to the nonmoving party." *Doe v. Univ. of Denver*, 952 F.3d 1182, 1189 (10th Cir. 2020) (second alteration in original) (quoting *Evans v. Sandy City*, 944 F.3d 847, 852 (10th Cir. 2019)). "While we view the record in the light most favorable to the party opposing summary judgment, 'the nonmoving party may not rest on its pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof.'" *Phillips v. Calhoun*, 956 F.2d 949, 950 (10th Cir. 1992) (quoting

*Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990)).

## IV.    ANALYSIS

### A.    Genuine issues of material fact exist regarding Plaintiff's breach of contract claim.

Plaintiff first moves for summary judgment on her breach of contract claim. [Doc. No. 30 at 5–6].[2] Because the Court's subject matter jurisdiction is based upon diversity, the Court applies Oklahoma law to Plaintiff's claim. *Renfro v. Champion Petfoods USA, Inc.*, 25 F.4th 1293, 1301 (10th Cir. 2022) ("In a case based on federal diversity jurisdiction, the law of the forum state governs.").

To establish that Defendants breached the Policy, Plaintiff must prove: "1) formation of a contract; 2) breach of the contract; and 3) damages as a direct result of the breach." *Digit. Design Grp., Inc. v. Info. Builders, Inc.*, 2001 OK 21, ¶ 33, 24 P.3d 834, 843. "The interpretation of an insurance contract and whether it is ambiguous is a matter of law for the Court to determine and resolve accordingly." *Dodson v. St. Paul Ins. Co.*, 1991 OK 24, ¶ 12, 812 P.2d 372, 376. When a provision is clear, consistent, and unambiguous, the Court will accept its plain and ordinary meaning, and the contract will be enforced to carry out the intentions of the parties. *Id*.

To succeed upon her motion for summary judgment, Plaintiff must demonstrate the absence of a genuine issue of material fact regarding the elements of her breach

---

[2] In this order, the Court uses page numbering from the CM/ECF stamp at the top of the filing on the district court docket.

claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) ("[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.") (internal quotation marks omitted).

Plaintiff's breach of contract allegations and related summary judgment evidence are, in a word, deficient. The arguments in Plaintiff's Motion fail to identify the absence of a genuine issue of material fact pertaining to whether Defendants breached the Policy. Plaintiff's assertions regarding how Defendants breached the Policy are vague. In the Motion, the entirety of Plaintiff's statements regarding how Defendants breached the contract are as follows: "[t]o date, some seven months after the accident, repairs to the vehicle have yet to be initiated. Instead of paying what is owed, MDOW demanded that Plaintiff [ ] execute a release which is not required by the policy and which would undercut policy obligations to pay Plaintiff's losses." [Doc. No. 30 at 6 (internal citations omitted)].

Plaintiff seems to allege that Defendants breached the Policy by not paying Plaintiff what they owed under the Policy. Plaintiff, therefore, would have the burden of demonstrating the absence of a fact issue relating to whether Defendants paid Plaintiff's claim. But Plaintiff does not attempt to meet this burden of proof and instead relies upon conclusory allegations that Defendants did not pay what they owed under the Policy.

The sparse summary judgment evidence produced by Plaintiff supports that Defendants sent Plaintiff a payment. [*See* Doc. No. 30-1 at 1–2 (July 9, 2024, email from Courtney Casey Schroeder at Croft to Plaintiff indicating Croft sent a check to Plaintiff)]. The payment was in the amount of the desk review estimate from a damage estimator. [Doc. No. 41-2, Declaration of Courtney Schroeder ¶¶ 8, 14 ("Croft received the funded check in the amount of the desk review estimate and mailed the check to Plaintiff, which was calculated as $2,798.01 (or $1,798.01 after applying the deductible)[.]")]. To the extent that payment was deficient to address the repairs covered by the Policy, the summary judgment evidence produced by Plaintiff also demonstrates that Defendants envisioned making supplemental payments directly to "the body shop." [Doc. No. 30-1 at 2–3 (July 9, 2024, email from Courtney Casey Schroeder at Croft to Plaintiff stating "[t]he first check is made payable to you and Emma. Any supplement checks will be made payable to the body shop.")]. Other than stating that the check was less than the amount of coverage for repairs estimated by Bob Howard Auto Repairs, Plaintiff has not alleged that the amount was insufficient to repair the insured vehicle, much less established the absence of a genuine issue of material fact pertaining to the payment. [Doc. No. 30 ¶ 6 ("The amount listed was $1,798.01 (after application of the deductible) and substantially less than the Bob Howard estimate.")].

Nor has Plaintiff demonstrated that Defendants were refusing to make further payments owed under the Policy. The Court, therefore, concludes that genuine issues of material fact exist regarding whether Defendants' payments to Plaintiff breached the Policy.

Plaintiff's allegations mainly focus on the language of the Proof of Loss. [*See* Doc. No. 42 at 1–2]. Because the Proof of Loss contains language that "would undercut policy obligations to pay Plaintiff's losses," Plaintiff claims that requiring Plaintiff to execute the Proof of Loss amounts to breach. [Doc. No. 30 at 6]. Plaintiff does not cite any supporting case law for her argument that execution of a document that could undercut an insurer's obligations under an insurance policy amounts to breach of that policy. [*See id.*]. Nor, as outlined above, has Plaintiff demonstrated the absence of a fact issue regarding the sufficiency of Defendants' payment under the Policy.

Plaintiff has not demonstrated the absence of a fact issue regarding whether Defendants conditioned payment of her claim upon the execution of the Proof of Loss. The summary judgment evidence illustrates that Defendants sent Plaintiff a payment even though Plaintiff had not executed the Proof of Loss as presented to her. [Doc. No. 30-1 at 1–2 (July 9, 2024, 4:52 p.m., email from Courtney Casey Schroeder at Croft to Plaintiff indicating Croft sent a check to Plaintiff); *id.* at 1 (July 9, 2024, 8:02 p.m., email from Plaintiff to Courtney Casey Shroeder at Croft discussing Proof of Loss Plaintiff returned to Croft)]. A genuine issue of material fact exists regarding whether Defendants were conditioning future payments upon the execution of the Proof of Loss. The communications produced by Defendants indicate that they were discussing supplemental claims that they would pay directly to Bob Howard Auto Repairs. [*See* Doc. No. 41-1 at 7 (June 20, 2024, email from Courtney Casey Schroder to Plaintiff (stating "[p]lease make sure that the body shop contacts the appraiser if they need to discuss the final amount of repairs. If there is a supplement request, the body shop will need to contact appraiser

Jaime Garza: email: modenawerks@hotmail.com, cell: 832-731-1782.")].

As outlined above, Defendants made a payment and outlined the process for Plaintiff to request supplemental payments. From the timeline outlined by Defendants (and not disputed by Plaintiff), Plaintiff's lawsuit halted continued remediation of Plaintiff's claim. [Doc. No. 41-2, Declaration of Courtney Schroder ¶¶ 19–21 (summarizing timeline of events, including Defendants' rejection of Plaintiff's edited version of the Proof of Loss and an email from Plaintiff's counsel with a courtesy copy of Plaintiff's petition, which stopped communications between the parties)]. Accordingly, the Court concludes genuine issues of material fact exist regarding whether Defendants requiring Plaintiff to sign the Proof of Loss amounts to breach of the Policy.

**B.    Genuine issues of material fact exist regarding Plaintiff's bad faith claim.**

Plaintiff next moves for summary judgment upon her claim that Defendants breached the duty of good faith and fair dealing. [Doc. No. 30 at 6–8].

"Under Oklahoma law, '[a]n insurer has a non-delegable duty of good faith while performing the functions of claims management, adjustment and settlement.'" *MPower, Inc. v. Phila. Indem. Ins. Co.*, 695 F. Supp. 3d 1302, 1311 (W.D. Okla. 2023) (quoting *Wathor v. Mut. Assurance Adm'rs, Inc.*, 2004 OK 2, ¶ 16, n.6, 87 P.3d 559, 563 n.6, *as corrected* (Jan. 22, 2004)). "This duty requires the insurer to take positive steps to adequately investigate, evaluate, and respond to its insureds' claims." *Id.* (citation omitted). The essence of a bad faith action "'is the insurer's unreasonable, bad-faith conduct . . . and if there is conflicting evidence from which different inferences may be

drawn regarding the reasonableness of [the] insurer's conduct, then what is reasonable is always a question to be determined by the trier of fact . . . .'" *Badillo v. Mid Century Ins. Co.*, 2005 OK 48, ¶ 28, 121 P.3d 1080, 1093, *as corrected* (June 22, 2005) (quoting *McCorkle v. Great Atl. Ins. Co.*, 1981 OK 128, ¶ 21, 637 P.2d 583, 587).

"The decisive question is whether the insurer had a 'good faith belief, at the time its performance was requested, that it had [a] justifiable reason for withholding payment under the policy.'" *Buzzard v. Farmers Ins. Co.*, 1991 OK 127, ¶ 14, 824 P.2d 1105, 1109 (emphasis omitted) (quoting *Buzzard v. McDanel*, 1987 OK 28, ¶ 10, 736 P.2d 157, 159). The focus is on the insurer's knowledge and belief during the time the claim is reviewed. *See id.* When a legitimate dispute exists between the insurer and insured, that dispute negates a bad faith claim as a matter of law. *Oulds v. Principal Mut. Life Ins. Co.*, 6 F.3d 1431, 1442 (10th Cir. 1993) ("Numerous Oklahoma cases have ruled as a matter of law that no reasonable inference of bad faith arises when an insurer denies a claim solely because of the existence of a legitimate dispute."). If the insurer establishes the existence of a legitimate dispute, the burden shifts to the insured to produce additional evidence of bad faith. *Sims v. Great Am. Life Ins. Co.*, 469 F.3d 870, 891 (10th Cir. 2006).

Since "[t]he decisive question is whether the insurer had a good faith belief, at the time its performance was requested, that it had [a] justifiable reason for withholding payment under the policy[,]" the Court must examine whether Defendants unreasonably withheld payment. *Buzzard*, 1991 OK 127, ¶ 14, 824 P.2d at 1109 (emphasis and citation omitted). As a threshold issue, Plaintiff has not alleged that Defendants withheld payment

under the Policy. Although Plaintiff's summary judgment briefing makes repeated reference that "Plaintiff is entitled to payment under the policy[,]" Plaintiff does not make factual allegations that Defendants failed to pay her. [Doc. No. 30 at 7].

The summary judgment evidence supports that Defendants did make a payment to Plaintiff and that Defendants intended to consider supplemental claims. Defendants directed Plaintiff to "make sure that the body shop contacts the appraiser if they need to discuss the final amount of repairs. If there is a supplement request, the body shop will need to contact appraiser . . . ." [Doc. No. 41-1 at 7, June 20, 2024, email from Courtney Casey Schroeder to Plaintiff]. Plaintiff does not allege that she pursued a supplemental claim that Defendants denied.

Instead, without citing to supporting law, she argues that, by requiring her to sign the Proof of Loss, Defendants breached the Policy by prohibiting her from ever being fully indemnified. [Doc. No. 30 at 7]. The Proof of Loss does contain language stating that the payment is Plaintiff's "entire satisfaction" and that she releases Defendants from all claims of loss or damage related to the accident. [Doc. No. 30-1 at 5]. Defendants assert as follows regarding the import of the Proof of Loss:

> [T]he Proof of Loss reflected a full settlement *as to Plaintiff.* Plaintiff fails to inform the Court, however, that while the Proof of Loss reflected a full settlement *as to checks made payable to Plaintiff*, the amounts cited in the Proof of Loss *do not reflect future requested and approved supplemental funds* obtained through the "Supplementation Process"—*i.e.*, if supplemental funds were needed to repair the Insured Vehicle in addition to the amount cited in the Proof of Loss, Bob Howard would submit a request for supplemental funds for review and approval where appropriate, and **Croft would send the supplemental funds via a check made payable *directly to the auto body shop and not Plaintiff***, as Croft does in its ordinary course of procedure.

[Doc. No. 41 at 10–11]. As detailed above, the summary judgment evidence supports that Defendants intended to consider requests for additional payment through the Supplementation Process. Accordingly, the Court concludes that a genuine issue of material fact exists regarding whether asking Plaintiff to sign the Proof of Loss amounts to bad faith.

Plaintiff also alleges that Defendants failed "to act in good faith to effectuate a prompt, fair and equitable settlement[.]"[3] [Doc. No. 30 at 8]. However, the timeline outlined by Defendants (and not disputed by Plaintiff) illustrates that Defendants were promptly responding to Plaintiff. [*See* Doc. No. 41 ¶¶ 12–30 (detailing timeline of Plaintiff's claim and communications between the parties); Doc. No. 41-2, Declaration of Courtney Schroeder ¶¶ 5–22]. The testimony of the adjuster handling Plaintiff's claim states that she received the initial information about the accident involving the insured vehicle on May 9, 2024. [Doc. No. 41-2, Declaration of Courtney Schroeder ¶ 3]. She mailed Plaintiff a check on July 8, 2024. [*Id.* ¶ 14]. Defendants' timeline of events indicates that Plaintiff's lawsuit halted communications between the parties about the

---

[3] In support of her bad faith claim, Plaintiff states "[t]his is plainly in violation of multiple provisions of the Oklahoma Unfair Claims Settlement Practices Act (36 O.S. § 1250.5), including but not limited to the requirement to act in good faith to effectuate a prompt, fair and equitable settlement[.]" [Doc. No. 30 at 8]. Because the only basis Plaintiff specifically outlines is the failure to effectuate a prompt, fair and equitable settlement, the Court only addresses this ground for asserting bad faith pursuant to the Oklahoma Unfair Claims Settlement Practices Act. Since Plaintiff has the initial burden of proof upon summary judgment, Plaintiff must set out the grounds for her claims and show she is entitled to judgment as a matter of law. The Court, therefore, will not consider any grounds for Plaintiff's claim not specifically enumerated, *i.e.*, "multiple provisions of the Oklahoma Unfair Claims Settlement Practices Act." [*Id.*].

remediation of Plaintiff's claim. [*See id.* ¶ 21]. Plaintiff asserts the language of the Proof of Loss would have prevented any future payments by Defendants, but the parties' communications do not support that Defendants were not planning on making future payments. [Doc. No. 42 at 2]. The Court, therefore, concludes a genuine issue of material facts exists regarding whether Defendants acted in bad faith by failing to effectuate a prompt, fair, and equitable settlement of Plaintiff's claim.

## V.    CONCLUSION

For the reasons outlined above, the Court DENIES Plaintiff's Partial Motion for Summary Judgment. [Doc. No. 30].

In light of this order, the Court ORDERS the parties to confer through counsel and submit a joint status report by **January 20, 2026**, with at least four proposed jury trial dockets that work for the parties, counsel, and witnesses.[4]

The Court also ORDERS the parties to engage in settlement discussions. The parties should have everything they need to evaluate their settlement positions and to meaningfully and in good faith attempt to resolve their case without further use of judicial resources. If the parties prefer to be ordered to ADR, whether a second, private

---

[4] The Court's normal jury trial docket is the second Tuesday of every month, except for November and December when the jury trial docket is the first Tuesday of the month. Criminal cases take priority on the Court's normal jury trial docket because of the defendants' speedy trial rights. If the parties want to be specially set, they may submit other available weeks, but the Court and the parties must still plan to conduct jury selection on the Tuesday of the normal jury trial docket month. For example, if the parties want to be specially set for jury trial on Monday, June 15, 2026, they will need to be available on Tuesday, June 9, 2026, to select a jury.

mediation or a judicial settlement conference, they shall indicate their preferred form of

ADR in their joint status report due on **January 20, 2026**.

IT IS SO ORDERED this 5th day of January 2026.

_____
JODI W. DISHMAN
UNITED STATES DISTRICT JUDGE